222364. Hi Mr. Stevenson. How are you? Doing well. Good morning your honors. May it please the court. Adam Stevenson on behalf of Appellant Bryant Aron. Mr. Aron has two primary sets of issues on appeal, but I'd like to begin today and focus on issues relating to the 11C1C agreement that he entered into with the government. That agreement for 96 months, was in our position accepted and rejected or at least rejected inappropriately and then resulted in him going to trial and receiving a statutory maximum 120 month sentence. The one difference between the 96 month sentence and the guidelines that played in there and the guidelines that ended up post trial was the acceptance of responsibility credit, again leading to that much higher statutory maximum sentence. And at threshold or at the beginning there is this question of whether the district court accepted then rejected the agreement. And this is important both because Brown from this court instructs us that ambiguities are relating to acceptance resolved in the defendant's favor. And Ritzema indicates Rule 11 requires a district court to give a definite announcement of acceptance, rejection, or deferral. So let's look at page 7 of your brief where you've set out precisely what the district court said. It's not clear to me that the district court has done anything more than accepted the recommendation. So that's the predicate of this. The magistrate judge recommends the court accept defendant's plea of guilty and adjudge the defendant guilty. So the district court says she adopts the findings and recommendation and the recommended disposition. I read that as the plea of guilty. And then she goes on to say subject to this court's consideration of the plea agreement pursuant to 11C. So I see her sort of dividing this into two things. One, acceptance of the plea of guilty. And two, acceptance of the 11C1C sentence. And that's where she, after looking at the relevant materials, she doesn't think that's adequate for this offense and then he's allowed to withdraw his guilty plea. He gets, in a sense, his full due process rights. So with regard to the second point, or the second component of Document 55, the court's written order accepting the recommendation, we would disagree for a couple points. One is subject to the court's consideration of the plea agreement pursuant to Federal Rule of Criminal Procedure 11C, if applicable and necessary. And Federal Rule of Criminal Procedure 11C covers several subsections. It does include 11C1C and the consideration thereof, but a number of other plea agreements and types of judicial consideration. And so it is at best ambiguous, and again, with that caveated language of, if applicable and necessary. Where at no point prior and no point immediately subsequent does the district court clearly indicate that it is still considering the plea agreement as it needed to under Ritzema. But she says subject to further consideration, I'll just summarize, the plea of guilty to the offense is accepted and he's adjudged guilty, but she doesn't say anything about the length of the sentence. Nobody at sentencing seems to have been confused about this since counsel were making arguments to the court as to why the plea agreement should be accepted. So I think with regard to the statements of the parties at what was called and was held as initially a sentencing hearing, both the parties to Judge Hamilton, your question, both parties indicated that they were making objections, but that they didn't matter. That the binding plea... No, that's not my point. Not about objections to guideline issues, but they were making arguments as to why the plea agreement should be accepted. Yes, eventually the sentencing hearing did transition into approximately 11 or 12 pages within the transcript, transition into, at the district court statement, a consideration of the plea agreement. But again, against the backdrop of Brown and the ambiguity of acceptance being the, or excuse me, ambiguity being resolved in favor of acceptance... What's ambiguous about subject to language that the district court used? There are the two points. The 11C doesn't provide sufficient notice that this is in fact the consideration and the type of plea that is being considered. And the if necessary and appropriate language, or if necessary and proper language, reads as if it is a standard or boilerplate language that's filed with this type of adoption or recommendation. This is contrary to... What's wrong with boilerplate language to deal with a routine kind of procedure? I think there's nothing wrong with boilerplate language generally. However, I think what would have been appropriate and would have in some ways resolved the matter would be to clearly indicate subject to the consideration of an 11C1C agreement. The one agreement that would bind the court. And again, 11C contains a number of other components to it that doesn't give sufficient notice to counsel with regard to acceptance or rejection. But to the point of if the court feels that it was not accepted and then rejected, there are a number of matters with regard to the district court's rejection of the agreement that were also inappropriate. First of all, the district court improperly participated in the plea negotiations in violation of Rule 11 through two particular types of comments at sentencing. First, with regard to questions made and statements made about the propriety of a plea in this type of case. The court directly asked the government, why seek a binding plea? Why a plea in this case instead of just giving the acceptance of responsibility credit up to the three-point level? Second, in similar circumstances to that of Crowell in the Fifth Circuit, the district court said numerous times that a much more significant sentence would be necessary. That there were far more aggravators than mitigators. And this is contrary to what the lead opinion in O'Neill says of to run shy of participation, a court must simply provide reasons for rejecting a plea without much editorial comment. You know the question that's coming, right? Which is, do you think the district court said too much or too little? And I think the answer is yes. Too much about what it shouldn't say, too little about what it needed to say. So with regard to your Honor's question, too much with regard to the editorial comment. Again, the questioning with regard to the propriety of the plea itself. That gets into the sort of blatant and or subtle pressures of the judiciary, which Crowell says that's the concern of a participation claim. Most district judges are not wild about 11C1C. Please, some at least pushback is not surprising to me. Is it inappropriate? I think where it rises to the level of editorial comment, I think yes. I think it is. It does weigh into future negotiations. It weighs into what may come to follow or whether such an agreement may exist in a given case within that single case. Why does all this matter? Once the district judge resets the clock, basically, and says we're not going to have a plea agreement, you can go to trial. It's going to be now. That's true. It loses acceptance of responsibility, but that's something that happens if somebody goes to trial sometimes. And the judge makes it clear why she thinks the 120-month sentence is the appropriate one. I don't see how the ultimate result in this case is really influenced by what you're talking about. Specifically with regard to the participation. Yeah, but with regard to the participation, she may be musing about, gee, I don't know why that happened. But by the time she puts it back at the beginning and says we're going to move forward with the trial, those are the rights that in these Rule 11 colloquies the judges are telling the person you're losing if you take the plea. You're losing the right to a jury of your peers. You're losing the right to confront witnesses. Blah, blah, blah. You lose all that. So in the end, he has a trial. Isn't that the process that he's due? No, Your Honor. I don't feel that is the appropriate process that's due. And this is a case in which the guidelines and the statutory maximum and the interplay of them, I think, adds additional complexity. That is, again, the only moving piece of the guidelines here was the acceptance of responsibility credit. Within the agreement was two points. The government did not choose to move for a third point because of the binding plea. Then after the trial, the three-point addition or the failure to provide it led to the statutory maximum becoming the guidelines range. In a different matter where the sentence was, the sentencing range was much larger, it might be a different case. But here the prejudice was direct and clear given the district court's comments and sentencing. Speaking of, with regard to rejection, this is where the district court said not enough but also did say too much. Not enough with regard to specifically identifying those matters under 3553A as uniquely tailored to Mr. Aaron that would be sufficient to reject a guilty plea. Gosh, I thought that she quite clearly explained the section 3553 factors. Why am I wrong? Your Honor, you're wrong on two points. One is the district court makes rote statements about considering certain 3553 factors and analogizing to sentencing. Starco, among others, indicates this is not often enough, just simply stating or indicating certain factors are at play. In addition, the district court notes a concern about unwarranted sentencing disparities. There was no co-defendant in this case, so the unwarranted disparities would be those of other folks with felon in possession of a firearm cases, which the guidelines themselves, as this court said in Matthews, take account for. No, I don't see the disparities pointed all that way. We've said you can look at disparities between co-defendants if there happens to be one, but in general, disparities are a larger inquiry. Yes, the guidelines take you part of the way, but people certainly make disparity arguments. Mr. Stevenson, let me ask you. Your answer to my question was yes, about too much and too little. How would you write an opinion articulating in a way that a district court judge could read and understand and then follow to say enough but not too much? Yes, Your Honor. First of all, in an initial matter with regard to the editorial comment, that is inappropriate for the participation claim. With regard to the acceptance and rejection. And making sure the judge knows what counts as an editorial comment. As opposed to a reason for rejecting as an inadequate sentence. Yes, and this is the exact issue that Judge Posner raised in concurrence in O'Neill. This is the judicial equivalent of squaring a circle. It is specific 3553 factors and specific connections and information about that defendant. How is that not negotiation? With regard to the appropriateness of the sentence under 11C1C and the potential alternative sentence or fit within the guidelines range. Especially because the guidelines contain policy statements about the guilty plea acceptance process. It is a requirement that a district court provide more and specific information under 3553A in order to reject. But again, not going so far, which is a very fine line. Well, okay. You're creating a razor's edge. And I'm asking you to articulate a rule that a district judge could follow. Yes. The rule I would suggest is that consideration under 3553A and the specific facts or information about that case. That demonstrates that that area is a concern. Similar to that sentence. What does that mean? That, for example, unwarranted disparities because this case is of a unique type that needs greater than other particular felon in possession of firearms. But she did that with the 3553. This criminal history is not adequately reflected by the guideline calculation. So with regard to those matters and considerations under the guidelines we discussed with regard to Cota Luna in the 6th Circuit, with regard to considering and basing rejection on the guidelines themselves is also potentially problematic. Why? Especially against the backdrop. The district judge doesn't have to follow them? Correct. But the guidelines themselves as a policy statement in 6B1.2C indicate that sentences within the guidelines are one of the plea agreements that the court should, not required, but should accept. And that, again, the concern being in a case like this with a statutory maximum very close to what was the agreed upon sentence, there is a significant danger of prejudice through inadequate notice about the preservation or reservation of right to consider a plea, and then the insufficient rejection or inappropriate rejection. I see that my time is concluding. I'd like to reserve the remainder for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the court. The district court had the power to reject Aaron's C1C plea agreement, and it acted within its discretion in electing to do so, and the court should therefore affirm. Turning first, Your Honor, to the claim that the district court had no power to reject the plea agreement, the court never accepted the plea agreement. Nothing in Appendix 3 suggests that the court did accept the plea agreement. It accepted. It referred the question of accepting the guilty plea to the magistrate. It received a recommendation, and it accepted the guilty plea, and it did so subject to this court's consideration of the plea agreement. That suggests to me that the court had not yet accepted the plea agreement. The only way, I think, to make sense of that language, that it was accepting it subject to Rule 11C, is that the one part of Rule 11C that deals with the guilty plea is Rule 11C5B, which says if the court later decides to reject the plea agreement, it has to give the defendant the opportunity to withdraw his guilty plea, and that's what happened here. Mr. Holler, can I ask you a couple of questions about practice in the Northern District of Indiana? Yes. Is it routine for pleas to be taken by magistrate judges? It is judge-specific, but with some, yes. Okay. It depends on the division and the judge. In the Fort Wayne division, I would say it is generally the practice that the magistrate accepts. Okay, and is there a, you might know, you might not want to tell me, and I respect that, but is there a history involving 11C1C pleas with Judge Brady or with other judges in the district who push back against them routinely, or I don't know how often they're used, so. They aren't regularly used, but they have been used on occasion. I believe Judge Brady has accepted C1Cs. I believe this was the second one that she rejected, not the first. Okay. We don't routinely use them, I would say, and in this instance, as my brief explains, we did initially offer a pretty standard C1B plea agreement. It went to the magistrate, and the defendant at the last minute got cold feet and said he wanted a C1C or nothing, essentially. So that's why we tried the C1C here. So the court did not accept the plea agreement on the question of what the court. So the critical distinction here, which I think does exist in the law, is that between accepting the plea and accepting the agreement. Absolutely, and the court accepted the plea subject to its consideration of the plea agreement. So it's high, essentially. I think in terms of the question of whether the court improperly participated in plea negotiations, that is controlled by Krauss. We're not writing on a blank slate and trying to come up with law. I don't think the court can say it any better than it already said it in Krauss. The court can make, within reason, whatever comments it needs to to explain why it's rejecting the plea agreement. It cannot comment on hypothetical plea agreements, on future plea agreements. It can't say I'll never accept a C1C. It can't say any of those things. But here, I mean, my opponents divided this, I think, into two baskets. One, essentially, are the court's explanation of why it's rejecting the plea agreement. Krauss says that's fine. And in fact, in Krauss, the court says a whole lot more than it says here. And the court was clear that, although that was very close to the line, it didn't really recommend doing that, that was OK. The problem was then the court went on, and in fact, in that case, it was the staff, but in Wright-Smith, it was the court, who commented on, well, we would accept 151 months or whatever they would accept. And you can't do that in any way. The court never said I'll only accept 120 months here. It didn't say that. I mean, it was indicating, perhaps, that just 96 didn't seem like the right number. Right. I mean, the guideline range here was 100 to 120. I don't know. Maybe it would have accepted 100. Maybe it would have accepted 110. I don't know. And we don't know because the district court never said. And the defendant didn't go on, as it could have, to say, all right, let's go ahead and plead, and let's see what the district court says. And if the court's comments at that point were insufficient, then he could have raised a procedural reception to reason in this claim. He chose instead to exercise his due process rights. So I think Crouse controls on that issue. On the question of did the district court say enough, the court said more than enough here. And I think the key case there is Viren, where the court said almost nothing. I mean, the court basically just said, I don't think this is consistent with the 3553 factors. And the court said well more than that here. In fact, all the court said in Viren was I'm unwilling to accept the sentencing limit as agreed to by the parties, period. Well, if that's enough, then the page or so that Judge Brady went on to here that pretty much, I think, explains that it's his criminal history that is 20 points, far more than the 13 he needs for criminal history category 6, that suggests that this sentence is not enough for the court. And it's significant criminal history. Mr. Hart, where an indictment fails to require knowledge of a defendant's status as a felon, would the submission of the proper elements to a jury and a jury's finding of guilt prevent any successful challenge to the indictment as a matter of course? Well, I don't know that it always would. But what the court said in Cotton was that if the evidence is essentially overwhelming and uncontroverted on that element, then we're not going to find harm here. I mean, first of all, we don't think that there was error, let alone plain error in the indictment. But if the court thinks that there was, then this case essentially is identical to Maez, where there were—in fact, it's better than Maez. In Maez, there were arguably errors both in the indictment and in the instructions to the trial jury. Here, the correct instructions were given to the trial jury and the defendant stipulated on that point. So I think in light of Cotton, there's not automatic reversal for an error in the elements presented to the grand jury. To the extent that the court thinks there was error in the elements presented here, the court could not find plain error. This indictment just tracks the language of the statute, though, right? I believe it basically tracks the language of the statute, yes. So it's a Rahaf error, right? It's a Rahaf error. The argument is there's a Rahaf error, but the language here, unlike in the Batiste case, which was part of Maez, where knowingly was sort of stuck in the middle, right? It sort of said—I mean, in Maez, it said the defendant knowingly yada, yada, yada, yada, everything. And the court said, well, you could read that to apply to both the felon status and to the possession status. In Batiste, it was the defendant being a felon, knowingly possessed a firearm. And the court said, well, you can't reasonably construe knowingly back here. So this one now, you know, we now have the defendant being a felon and possessing a firearm and did so knowingly. So I would say this is like Maez. You read it back to both. Now, in Maez, there was trial error, so the court still had to reach the issue. My argument here would be there's no error. Certainly, there's no error. I don't think, unlike in Maez, the defendant has demonstrated good cause. The burden's on the defendant if the defendant thinks he doesn't understand the indictment to go forward and to say, I have a Rule 12 objection. Now, that was excused in Maez because this court had case law saying, you know, we're not going there. Well, it was an intervening Supreme Court decision. Well, the case was on appeal. Yes, exactly. Well, here the intervening decision came down the day after the grand jury indictment was returned. The defendant had plenty of time to file a Rule 12 objection. So I don't think there's good cause here to even reach the issue. But if the court wants to get into the merits, as Judge Rovner asked, at that point, I think this follows from Maez, this follows from Nance, this follows from Cotton, that the evidence here was overwhelming and uncontroverted. Could the defendant have made this an issue at trial? I suppose he didn't. Could anybody have made this an issue in the grand jury, that there is probable cause to think that the defendant, who twice spent more than a year in jail on a felony, might have known that he was a felon? No, there's probable cause to think he might know that. That's the standard. So if we didn't present this to the grand jury, and there's no evidence of that in the record, the grand jury surely would have said, yeah, we think there's a reason to think he might have done that. So I think it would be a very rare and unusual set of facts where, after the defendant was convicted at trial, he could raise a claim like this on an element at the grand jury stage. But I think the court can reserve that if it wishes to. My opponent did not discuss the guideline issue. I don't think there is a guideline issue here. For all the reasons we've already expressed, the court did not accept the plea agreement. So anything related to that doesn't show anything. And the court did not clearly err here. The cases that my opponent cites involve instances where the defense at the sentencing hearing raised factual objections, so the government had to come in with facts. Here, Judge Brady asked at the status hearing, do you want an evidentiary hearing? Are you challenging the facts, or are you essentially just raising this acquitted, non-convicted conduct issue, which is certainly a hot-button issue right now. And it's fine for the defendant to preserve that issue. But that appears to have been the only issue the defendant was preserving. He's not particularly raising that here. And so there was no need for us to have an evidentiary hearing. Based on the undisputed facts in the pre-sentence report, the district court did not clearly err in finding that he used the gun that was found in his car to shoot this man nine days earlier. If the court has any more questions, I'm happy to answer them. Otherwise, we would ask that the judgment be affirmed. Thank you very much. Mr. Stephenson, give him his full three minutes, please. Thank you, Your Honor. Just three points today in rebuttal. First, with regard to the reference in Krauss, King and Viren are all cases that do set out when rejection of an 11C is appropriate. Specifically, though, with regard to Viren, the court's opinion does give short page length to what the district court said at sentencing. But looking to the government's briefs and the actual citations to quotes of what the district court said in those briefs, it was much more extensive. In fact, the district court indicating that it was one of the highest reoffense risks for a defendant that they had ever encountered. So it wasn't just a simple statement of, I don't feel this is an appropriate sentence. With regard to the indictment matter, Judge Rovner, and your question about the jury instructions and other matters, Wabanese and Manousiak from the Third Circuit in our brief indicate that even completed jury verdicts, pursuant to correct indictments are not necessary, excuse me, correct instructions, are not necessarily sufficient to overcome this violation of the Fifth Amendment right to sufficient indictment. And then last but not least, with regard to Mayes, Mayes features two different defendants in that case with different indictments that I think are relevant to Mr. Aaron's case. In Mayes, the knowing phrase preceded the prior conviction stage, so it does seem to follow more naturally. However, the defendant Baptiste had knowing after the prior conviction phase, or phrase, excuse me, and therefore the court did not feel that knowing could be read appropriately in reverse. In Mr. Aaron's case, knowingly is at the very end of the indictment. And therefore, I think similar to Baptiste, if not perhaps even more so, makes it an odd construction to read knowingly consistent with everything that preceded it after having read through the entirety of the indictment. Therefore, Mr. Aaron does feel that this is plain error. Unless there are remaining questions, Mr. Aaron asks the court to vacate his conviction and sentence and remand for further proceedings. Thank you so much, Mr. Stevenson. And Mr. Stevenson, you were appointed, were you not? You really have the court's gratitude for the fine job that you and your associate have done. And Mr. Holler, thank you for the fine work you do for the government. Really a pleasure to have you both. All three of you. All right. Case, of course, as always, is going to be taken under advisement. Thank you.